# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RANDALL M., ) <br> ) <br> Plaintiff, ) <br> ) No. 18-cv-2101 <br> v. ) <br> ) Magistrate Judge Susan E. Cox <br> NANCY A. BERRYHILL, Deputy ) <br> Commissioner for Operations for the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Randall M.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability insurance benefits ("DIB") under the Social Security Act. The Parties have filed cross motions for summary judgment.[2] For the reasons detailed below, the Commissioner's Motion for Summary Judgment (dkt. 24) is granted and Plaintiff's motion (dkt. 16) is denied.

## I. Background

### a. Factual Background and Procedural History

Plaintiff injured his back while working as a warehouse worker for Jewel Osco; while lifting a 90-pound case of meat, he felt pain in his lower back. (R. 268, 591.) An MRI from August 2013 showed "[s]ingle level left paracentral broad-based disc protrusion with visible annular tear at L4-L5, causing left lateral recess and left neural foraminal narrowing with compression of the exiting left L4 and traversing left L5 nerve roots." (R. 272.) On August 8, 2013, Plaintiff presented to his treating

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] Plaintiff filed a Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 16), which this Court construes as a motion for summary judgment.

physician, Dr. Kevin M. Koutsky, M.D., who diagnosed Plaintiff with lumbar spondylosis, recommended physical therapy and light-duty restrictions at work, and prescribed pain medications. (R. 269.) During the remainder of 2013, Plaintiff underwent a conservative treatment regimen, including physical therapy and epidural injections, but his condition did not show significant improvement. (R. 262-68.) Despite seeing some improvement during the first quarter of 2014, Plaintiff reached a plateau, and began discussing the possibility of surgical interventions more seriously with Dr. Koutsky. (R. 259-62.)

On May 2, 2014, Dr. Howard An, M.D., performed an Independent Medical Examination ("IME"). (R. 228.) Dr. An diagnosed Plaintiff with "axial back pain with left-sided L4 radiculopathy due to protruding disc into the foramen at L4-L5 with L4 radiculopathy." *Id.* Dr. An noted that Plaintiff had received "all appropriate treatment so far, but his symptoms persist, therefore microscopic laminoforaminotomy at L4-L5 may be a reasonable option for this patient to relieve his radicular symptom and improve his condition." (R. 229.) Dr. An opined Plaintiff had reached maximum medical improvement with therapy and could perform light duty work, provided he did not lift more that 20 pounds, and avoided frequent bending and twisting. *Id.* According to Dr. An, Plaintiff's prognosis with the aforementioned surgery would be a return to work in two to three months following surgery, with maximum medical improvement following the surgery being reached in four or five months. *Id.*

Following the IME, Plaintiff continued treating with Dr. Koutsky with physical therapy and pain medication for breakthrough pain. (R. 258.) On June 26, 2014, Plaintiff indicated he would like to go forward with lumbar decompression surgery, and Dr. Koutsky prescribed a surgical back brace, a cold therapy unit, a TENS unit, and a home exercise kit to aid Plaintiff in his recovery from the surgery. (R. 256-257.) A July 11, 2014 MRI showed L4-L5 disc bulging and narrowing of the foramina. (R. 271.)

On August 12, 2014, Dr. Koutsky performed a decompressive laminectomy L4-L5 with foraminotomy for lateral recess stenosis on Plaintiff. (R. 316.) In the weeks following surgery, Plaintiff continued to follow-up with Dr. Koutsky and participate in physical therapy. (R. 455, 459.) An MRI from September 18, 2014, showed: 1) postoperative changes following laminectomy L4-L5; 2) enhancing fluid collection in the subcutaneous fat in the operative site and the epidural space at L4-L5; and 3) residual mild disc bulge and endplate spurring at L4-L5 without new disc herniation or spinal stenosis. (R. 463.) Approximately six weeks post-surgery, Plaintiff began to notice some drainage in his surgical wounds, and Dr. Koutsky believed that an irrigation and debridement surgery would need to be performed. (R. 454.) Plaintiff had that surgical procedure done on September 30, 2014, and was discharged from the hospital October 2, 2014. (R. 387.)

After three weeks of healing, Plaintiff was cleared to resume physical therapy. (R. 450.) On December 11, 2014, Dr. Koutsky opined that Plaintiff would "likely need a few more months of therapy" and would remain off work during that time. (R. 448.) Plaintiff continued physical therapy and treating with Dr. Koutsky until May 4, 2015, when he was transitioned to a work hardening/conditioning program; the plan was to conduct a functional capacity examination ("FCE") following completion of the work hardening/conditioning program. (R. 671.) Following 20 sessions of work conditioning, Plaintiff was able to walk without pain for 30 minutes at two miles per hour, his lumbar range of motion was within normal limits, and could lift 20 pounds from floor to his waist 10 times with minimal complaints of low back pain. (R. 730.) His physical therapist reported that he was able to tolerate constant standing, and frequent squatting, stooping, bending, and twisting. (R. 731.) After, 30 sessions of work conditioning, Plaintiff was additionally able to lift 45 pounds from knee to waist for two sets of ten repetitions. (R. 732.)

On July 29, 2015, Plaintiff had an FCE with Agnes C. Lim, P.T. (R. 722.) Ms. Lin made the following findings regarding Plaintiff's functional activity tolerance: 1) frequent sitting, standing, and

3

walking; 2) frequent stooping/bending; 3) constant twisting; 4) frequent squatting; 5) frequent pushing/pulling a sled with 45 pounds for 25 feet; 6) occasional pushing/pulling a sled with 60 pounds for 25 feet; 7) frequent lifting/carrying 25 pounds from floor to chest for 15 feet; 8) occasional lifting/carrying 45 pounds from floor to chest for 15 feet; 9) frequent reaching with deficits; and 10) constant grasping/handling. (R. 727.) She concluded that Plaintiff's "current functional abilities and musculoskeletal findings demonstrate that he cannot return to his previous full work activity." (R. 723.) However, she found that Plaintiff "demonstrated the physical capabilities to function at the Light-Medium Physical Demand Level as defined by the U.S. Department of Labor, which is indicative of a 2-hand occasional lift of 45 lbs. from floor to chest level." (R. 722.)

Plaintiff follow-up with Dr. Koutsky after the FCE on August 6, 2015. (R. 667.) Dr. Koutsky noted that Plaintiff's therapist recommended Plaintiff continue with work conditioning until the end of the month, kept Plaintiff off work, and gave Plaintiff bilateral paralumbar muscle trigger point injections. (R. 667.) Plaintiff continued work conditioning into September 2015, at which time he was scheduled for a final FCE. (R. 752.) According to Dr. Koutsky, "[w]e anticipate returning him to work per the FCE restrictions, however, he remains off, pending the evaluation." *Id.*

A second FCE was performed by Ms. Lim on September 23, 2015. (R. 782.) She concluded that Plaintiff's "current functional abilities and musculoskeletal findings demonstrate that he cannot return to his previous full work activity" because he was unable to meet the necessary push/pull and lift/carry requirements to perform his essential job demands. (R. 783.) However, she found that Plaintiff "demonstrated the physical capabilities to function at the Medium Physical Demand Level as defined by the U.S. Department of Labor, which is indicative of a 2-hand occasional lift of 50 lbs. from floor to chest level." *Id.*

On October 22, 2015, Plaintiff reported to Dr. Koutsky that he had completed his work conditioning program and he had been improving. (R. 751.) On November 19, 2015, Dr. Koutsky

4

noted that Plaintiff had completed all of his physical therapy, advised Plaintiff to continued his physical therapy exercises at home, and released him to work with restrictions consistent with his FCE. (R. 750.) Plaintiff continued to follow up with Dr. Koutsky through the first half of 2016; although he occasionally had increased back pain, he reported he was managing his condition "fairly well" through home exercise and as-needed pain medication. (R. 747-49.)

Plaintiff filed his application for disability insurance benefits on June 9, 2014. (R. 21.) His claim was denied initially on August 25, 2014, and upon reconsideration on April 15, 2015. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held in Chicago on October 27, 2016. *Id.* The ALJ issued a written opinion on January 9, 2017, finding that Plaintiff had been disabled from October 18, 2013, through July 28, 2015, but was not disabled beginning on July 29, 2015. (R. 21-38.) Plaintiff requested a review by the Appeals Council, which was denied on January 24, 2018, making the ALJ's decision the final decision of the agency, and vesting this Court with jurisdiction to hear Plaintiff's appeal. 42 U.S.C. § 405(g).

 b. **The ALJ's Decision**

The ALJ, Nathan Mellman, issued a written decision on January 9, 2017. (R. 21-38). The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2018. (R. 24.) At step one,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since October 18, 2013. *Id.* The ALJ's opinion was then functionally broken into two sections – one portion of the analysis for the period from October 18, 2013, to July 28, 2015 (hereinafter the "Disability Period"), and a second portion devoted to the period from July 29, 2015 onward (hereinafter the "Post-FCE Period"). At step two, the ALJ concluded that Plaintiff had the severe impairments of degenerative disc disease and status post-decompressive laminectomy with radiculopathy from L4-L5 during the Disability Period and the Post-FCE Period. (R. 24, 30.) At step three, the ALJ determined

---

[3] *See infra*, Section II, for a discussion of the five-step analysis in Social Security cases.

that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25, 30.)

For the Disability Period, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 25.) At step four, the ALJ further found that Plaintiff was unable to perform any past relevant work during the Disability Period. (R. 28.) The ALJ noted that Plaintiff was closely approaching advanced age at the time of his onset date, had a high school education, was able to communicate in English, and had previously performed unskilled work. (R. 29.) At step five, the ALJ determined that, considering the Plaintiff's age, education, work experience, and RFC, there were no jobs in that existed in significant numbers in the national economy that the claimant could have performed during the Disability Period. *Id.* Therefore, Plaintiff was disabled during the Disability Period. (R 30.) According to the ALJ, had the Plaintiff been able to perform the full range of light work, the ALJ would have found Plaintiff not disabled; however, the limitations on Plaintiff's RFC eroded the occupation base of unskilled light work such that no jobs in the national economy existed that Plaintiff could have performed during the Disability Period. Among the reasons the ALJ cited for his finding was Plaintiff's "significant participation in physical therapy and rehabilitative care during [the Disability Period], which would have resulted in absences two or more times per month and an inability to participate in competitive employment." (R. 27.) The ALJ reached this conclusion despite Plaintiff's treating physician, Dr. Koutsky, noting that Plaintiff could perform light duty work during much of 2013 and 2014. *Id.*

Having completed his findings regarding the Disability Period, the ALJ moved on to the Post-FCE Period; the ALJ found that medical improvement occurred as of July 29, 2015. (R. 31.) The ALJ based this finding primarily on the July 29, 2015 FCE, which concluded that Plaintiff could perform work at the light-to-medium physical demand level, indicative of a two-hand occasional lift of 45

6

pounds from floor to chest level. *Id.* The ALJ stated that the medical improvement was related to the ability to work because it increased Plaintiff's RFC. Therefore, before step four for the Post-FCE Period, the ALJ found that the Plaintiff had the following RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), with the following limitations: 1) occasional lifting and carrying 45 pounds; 2) frequently lifting and carrying 25 pounds; 3) sitting for six hours; 4) standing for six hours; 5) walking for six hours; 6) pushing and pulling as much as Plaintiff could lift or carry; 7) frequent stooping, kneeling, crouching, and crawling. (R. 32.) The ALJ determined that Plaintiff was able to perform his past relevant as a warehouse assembler/store laborer as that job is performed in the national economy during the Post-FCE Period, and, therefore, was not disabled. (R. 36-37.)

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*,

362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

**III. Discussion**

Plaintiff makes two arguments in support of his motion. Although both arguments are substantively the same (*i.e.*, the ALJ did not properly consider Plaintiff's subjective symptoms), the Court will address the arguments separately to maintain consistency with the presentation of Plaintiff's arguments in his brief.Because the Court finds the ALJ properly considered Plaintiff's

8

reported symptoms, the Court rejects Plaintiff's arguments and denies his motion, as discussed below.

### a. The ALJ Properly Assessed Plaintiff's Claims Regarding His Need to Lie Down and Ability Stand and Lift

According to Plaintiff, the ALJ erred in failing to consider Plaintiff's testimony at the hearing that his condition required him to lie down and nap for approximately one hour per day and prevented him from standing for more than 15-20 minutes or lifting 10-15 pounds.

Under the Social Security Regulations, the ALJ undertakes a two-step process in evaluating a claimant's symptoms and subjective complaints about the severity and nature of the relevant impairments. First, the ALJ must determine whether the claimant has a medically determinable impairment that "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Second, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine how those symptoms limit the capacity for work. 20 C.F.R. § 404.1519(c). The ALJ's assessment on this issue will only be disturbed if it is "patently wrong." *Taylor v. Berryhill*, 2018 WL 5249234, at \*6 (N.D. Ill. Oct. 22, 2018).

Plaintiff believes that the ALJ did not properly consider Plaintiff's testimony that he would need to lie down or nap for 1-1.5 hours every day and was woozy when he took Tramadol for his pain. (Dkt. 16 at 7.) First, the ALJ considered the effect of Plaintiff's medication on his ability to work. Plaintiff testified he only took his medications intermittently and had not taken his medications in the five days preceding the hearing before the ALJ; the ALJ considered this testimony in making his RFC finding. (R. 36.) Additionally, the medical records demonstrate Plaintiff was taking his medication on an as-needed basis to control pain, and consulted with Dr. Koutsky regarding those medications and their potential side effects. (*See* R. 751.) Nonetheless, the record contains no evidence Plaintiff ever complained of wooziness from his medications, and Dr. Koutsky released Plaintiff to work, despite prescribing him the medications that Plaintiff now claims prevent him from working in a competitive environment. While Plaintiff might disagree with the conclusion reached

by the ALJ, the standard or review is not whether the ALJ is wrong, but whether substantial evidence supports his findings. The Court believes the ALJ properly considered Plaintiff's medications and their potential effect on his ability to work and that substantial evidence supports his conclusion.

Nor does the Court believe the ALJ's failure to consider Plaintiff's claims that he needed to lie down for 60-90 minutes per day reversible error. Although it may be reversible error to fail to provide a rationale for discrediting a Plaintiff's subjective symptoms, it "may constitute harmless error if the agency's decision is overwhelmingly supported by the record and thus remand would be pointless." *Mueller v. Colvin*, 524 Fed. App'x 282, 285 (7th Cir. 2013) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). Here, the Court believes the record overwhelmingly demonstrates the ALJ's opinion was supported by the medical records, including, but not limited to: two FCEs clearing Plaintiff to return to work; the Plaintiff's treating physician clearing him to go to work; and the lack of any suggestion during his regular physical therapy or work conditioning sessions that he required regular periods lying down. In short, a remand based on the ALJ's failure to discuss this one subjective complaint that shows up only in Plaintiff's hearing testimony and is not supported anywhere else in the voluminous administrative record would be pointless, and the ALJ's failure to consider that complaint constitutes harmless error.

Next, Plaintiff argued that the ALJ failed to consider that Plaintiff testified he was unable to stand for more than 15-20 minutes or lift more than 10-15 pounds. (Dkt. 16 at 8.) Plaintiff apparently asserts that the ALJ's reliance on the two FCEs was misplaced because they included reports that Plaintiff exhibited pain mannerisms and guarded movement patterns during the examination.[4] (R. 591-96.) However, the Plaintiff seems to ignore that the individual performing the FCEs noted

---

[4] The Court is unclear regarding the main thrust of Plaintiff's argument in this section. He writes "the evaluations did not specify that [Plaintiff] had pain mannerisms during lifting and standing," but then proceeds to list all the times the evaluations noted pain mannerisms during lifting and standing. (Dkt. 16 at 9.) The Court is unsure whether Plaintiff's issue is that the ALJ failed to address the notation of pain mannerisms in the FCE or whether the FCE failed to note pain mannerisms. If it is the latter, that argument is clearly belied by the FCEs themselves. Therefore, the Court assumes it is the former.

these pain mannerisms, and concluded they did not preclude the Plaintiff from engaging in full-time work. The ALJ ultimately relied on these very conclusions in making his RFC finding, and the Court assumes the ALJ read the FCEs in their entirety and was aware of the pain mannerisms exhibited by Plaintiff. Plaintiff also argues that the ALJ should not have given weight to the FCEs because they "lasted part of a day, and did not asses his abilities on an ongoing basis, 8 hours per day, 5 days per week." (Dkt. 16 at 9.) Plaintiff is incorrect. The entire purpose of the FCE is to assess Plaintiff's ability to engage in full-time work, and the authors of the FCE reports made findings in accordance with that threshold. To the extent Plaintiff's complaint is that the FCE only lasted a portion of a day, and, therefore, could not accurately measure Plaintiff's ability to work full-time, the Court is also not moved by this argument. Taken to its logical extreme, the only evaluation that could satisfy that standard would be an FCE that required Plaintiff to work full-time to determine if he could, in fact, work full-time. The fact that an FCE only lasts a portion of a day does not necessarily mean it cannot accurately measure a claimant's ability to work on a full-time basis, and the Court rejects any argument to the contrary.

**b. The ALJ Properly Assessed Plaintiff's Subjective Symptoms**

The remainder of Plaintiff's brief is essentially a list of alleged errors the ALJ made in his symptom analysis. The Court will take each of these in turn.

First, Plaintiff argues that the ALJ erred by finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in the record for the reasons explained in this decision." (R. 32-33.) The Plaintiff contends that the word "entirely" in that sentence suggests the ALJ held the Plaintiff to a higher standard than is dictated by the regulations. (Dkt. 16 at 9.) The Court rejects that argument. Although the word choice by the ALJ was not precise, a review of the ALJ's opinion, as a whole, demonstrates he applied the appropriate preponderance standard and was not requiring a one-to-one

11

correlation between the medical evidence and Plaintiff's statements regarding his symptoms.

Second, Plaintiff argues the ALJ failed to consider his testimony regarding his ability to perform activities of daily living. However, a review of the ALJ's opinion demonstrates he considered Plaintiff's testimony regarding his activities of daily living, including his inability to wash his back independently, and did not believe that testimony demonstrated Plaintiff was disabled. (R. 36.) The Court finds that the ALJ's findings regarding Plaintiff's activities of daily living were based on substantial evidence and rejects Plaintiff's argument.

Finally, Plaintiff asserts that the "ALJ also improperly evaluated [Plaintiff's] subjective complaints based on a lack of objective findings." (Dkt. 16 at 11.) However, the portions of the ALJ's opinion cited by Plaintiff thereafter concern the ALJ's RFC determination, not his analysis of Plaintiff's subjective symptoms. (R. 33.) In other words, the ALJ was not discounting Plaintiff's subjective complaints because they lacked a basis in objective evidence, but instead citing the objective medical evidence that supported his finding that Plaintiff retained the RFC to perform medium work with the aforementioned limitations. As such, Plaintiff's argument is unavailing.[5]

In sum, Plaintiff's arguments regarding the symptom evaluation are either incorrect or misstated, and the Court believes Plaintiff's motion should be denied.

## IV. Conclusion

For the foregoing reasons, the Commissioner's Motion for Summary Judgment (dkt. 24) is granted and Plaintiff's motion (dkt. 16) is denied. The final decision of the Commissioner is affirmed.

Entered: 6/13/19

_____
U.S. Magistrate Judge, Susan E. Cox

---

[5] Plaintiff also included an argument regarding the ALJ's failure to consider medications and other treatment in this section of his brief. However, much of those arguments are duplicative of the discussion earlier in this opinion, and the Court will not re-state its findings here.